IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Corporate Excise Tax

COMCAST CORPORATION AND )
SUBSIDIARIES, )
                       )
         Plaintiff, )    TC-MD 140214C
                       )
      v. )
                       )
DEPARTMENT OF REVENUE, )
State of Oregon, )
                       )
         Defendant. )    **ORDER**

This matter is before the court on cross-motions for partial summary judgment. The appeal involves Plaintiff's[1] challenge to Defendant's three January 24, 2014, Notices of Deficiency Assessments (assessments) for the tax years ending December 31, 2007, December 31, 2008, and December 31, 2009. (Ptf's Comp at 2, Compl Exs 6-8.)

Marilyn J. Harbur (Harbur), Senior Assistant Attorney General, and Daniel Paul (Paul), Assistant Attorney General, filed briefs on behalf of Defendant.[2] Mark P. Trinchero (Trinchero), and Gregory A. Chaimov (Chaimov), Davis Wright Tremaine LLP, filed briefs on behalf of Plaintiffs. With them on Plaintiff's briefs were Jeffrey A. Friedman, Alicia Pilar Mata, and Timothy A. Gustafson, Sutherland Asbill & Brennan LLP. Defendant's initial Motion for Partial Summary Judgment was filed with the court on July 30, 2014 (Def's Mot Partial Summ J). Plaintiff's cross-motion for summary judgment, titled Plaintiff's Motion for Partial Summary

---

[1] Comcast Corporation and Subsidiaries (the named Plaintiffs in this case) refer to the organization in its motions "collectively [as] 'Plaintiff.' (Ptf's Mot Partial Summ J at 1; Ptf's Mem Opp'n Def's Mot Partial Summ J at 1.) For clarity, consistency, and ease of reference, the court adopts Plaintiff's chosen corporate identification appearing in its briefings filed with this court.

[2] The court lists Defendant first because the original briefing schedule called for Defendant to submit a Motion for Partial Summary Judgment, followed by a response by Plaintiff, and then a reply by Defendant. After Defendant filed its summary judgment motion, Plaintiff filed its own Motion for Partial Summary Judgment.

Judgment and Points and Authorities (Ptf's Mot Partial Summ J), was filed with the court on August 26, 2014. The parties filed additional responsive memorandums, and briefing closed October 21, 2014.[3] The parties did not request oral argument.

## I. FACTS

A.     *Operational Overview of Plaintiff's Business*

Plaintiff was "a leading provider of video, high-speed Internet and digital [Voice over Internet Protocol, or VoIP] phone services" during 2007, 2008, and 2009, the tax years at issue. (Ptf's Mot Partial Summ J at 2; Def's Mot Partial Summ J at 2; *see also* Ptf's Ex 1 at 3, Ex 2 at 3, Ex 3 at 5; Def's Exs C at 3, D at 3, E at 5.)[4] Plaintiff provided all three of those services through its "coaxial and/or fiber optic cable network[.]" (Ptf's Mot Partial Summ J at 2, First Donnelly Decl at 2; *see also* Def's Mot Partial Summ J at 2.)

During the three tax years at issue (2007, 2008, and 2009), Plaintiff provided its services "in several states, including Oregon." (Ptf's Compl at 1; Def's Mot Partial Summ J at 2.[5]) The parties agree that Plaintiff's cable systems allowed for the two-way transmission of electronic

---

[3] Defendant filed its Motion for Partial Summary Judgment on July 30, 2014. Plaintiff filed a Motion for Partial Summary Judgment on August 26, 2014, pursuant to the provisions in Tax Court Rule (TCR) 47 A, and a Memorandum in Opposition to Defendant's Motion for Partial Summary Judgment (Ptf's Mem Opp'n Def's Mot Partial Summ J) on September 2, 2014. Plaintiff's two submissions were accompanied by the first and second declarations of Thomas J. Donnelly, Vice President, State and Local Tax, for Plaintiff (Donnelly).

On September 15, 2014, Defendant filed a single combined response to Plaintiff's two separate briefings (Ptf's Cross Mot Summ J and Mem Opp'n Def's Mot Summ J, described above). Defendant titled that document Response to Plaintiffs' Motion For Partial Summary Judgment and Reply (Def's Resp & Reply). Defendant's two submissions (Def's Mot Partial Summ J and Resp & Reply) were accompanied by the first and second declarations of Marilyn J. Harbur.

Defendant subsequently submitted a Supplemental Authority (Def's Supp Auth), filed on October 14, 2014, because of the October 2, 2014 Oregon Supreme Court Opinion in *Comcast Corporation v. Department of Revenue (Comcast II),* 356 Or 282 (2014). Plaintiff responded with a Supplemental Reply in Support of its Motion for Partial Summary Judgment and Supplemental Opposition to Defendant's Motion for Partial Summary Judgment (Ptf's Supp Reply), which the court received and filed on October 21, 2014.

[4] The parties submitted identically-numbered copies of Plaintiff's Form 10-K annual reports for each of the tax years at issue. (*Compare* First Harbur Decl, Exs C-E *with* First Donnelly Decl, Exs 1-3.)

[5] Defendant quotes from Plaintiff's 2007 Form 10-K, in part: "[w]e are the largest cable operator in the United States," which implies Plaintiff operates in at least two states. (Def's Mot Partial Summ J at 2.)

signals for all three tax years before the court. (Ptf's Mot Partial Summ J at 2, Ptf's Mem Opp'n Def's Mot Partial Summ J at 2; Def's Resp & Reply at 3-4.)

B.    *Plaintiff's Revenue Sources*

Plaintiff reported its operations in *two segments, Cable* and *Programming*. (Def's Mot Partial Summ J at 2; Ptf's Ex 1 at 3, Ex 2 at 3, Ex 3 at 5.)

1.    *Cable Segment Rrevenues*

Plaintiff derived its "Cable" segment revenues *primarily* from its video, Internet, and phone services, although it generated an additional revenue from "advertising," "other sources," and "franchise fees." (Ptf's Mot Partial Summ J at 2-4; Def's Mot Partial Summ J at 2-3.) Plaintiff's 2009 Form 10-K states that it generated revenues "primarily from subscriptions to [its] video, high-speed Internet and phone services ('cable services') and from the sale of advertising." (Def's Ex E at 55; Ptf's Ex 3 at 55.) During the tax years at issue Plaintiff's Cable segment served from 23.6 to 24.2 million video subscribers, from 13.2 to 15.9 million high-speed Internet subscribers, and from 4.6 to 7.6 million phone subscribers. (Ptf's Ex 1 at 3, Ex 2 at 3, Ex 3 at 5.)

Plaintiff's Cable segment accounted for 95 percent of its consolidated revenue and 95 percent of its assets during the tax years at issue. (*Id.*) Plaintiff's revenues from its Cable segment were generated in the following proportions from its various activities:

/ / /

/ / /

/ / /

/ / /

/ / /

|                     | 2009     | 2008  | 2007  |
|---------------------|----------|-------|-------|
| Video               | 57.2%    | 58.8% | 60.9% |
| High-speed internet | 22.9%    | 22.2% | 21.7% |
| Phone               | 9.6%     | 8.1%  | 6.0%  |
| Advertising         | 4.3%     | 5.2%  | 5.9%  |
| Franchise fees      | 2.8%     | 2.8%  | 2.8%  |
| Other               | 3.2%     | 2.9%  | 2.7%  |
| Total               | 100%[6]  | 100%  | 100%  |

(Def's Ex E at 78; Ptf's Ex 3 at 78.)

2.     *Programming Segment Revenues*

Plaintiff's Programming segment was primarily comprised of its "consolidated national programming networks, including E!, The Golf Channel, VERSUS, G4 and Style." (Ptf's Ex 1 at 3; Ptf's Mot Partial Summ J at 3; *see also* Ptf's Mem Opp'n Def's Mot Partial Summ J at 4.)

C.     *Plaintiff's Electronic Signal Transmissions*

The parties agree that Plaintiff's video services permitted its subscribers to send electronic signals back to it across its cable network. (Def's Resp at 3; Ptf's Mot Partial Summ J at 2, 4; Ptf's Mem Opp'n Def's Mot Partial Summ J at 2-3; Second Donnelly Decl at 1-2.) Plaintiff explains that its video services "involved one-way and/or two-way transmission[s] of electronic signals." (Ptf's Mot Partial Summ J at 2, *quoting* First Donnelly Decl ¶ 4.) The examples provided by Plaintiff of "advanced two-way video services" are: "high-definition television, digital video recorders, and [Plaintiff's] 'On Demand' service." (Second Donnelly Decl at 1-2; *see also* Ptf's Mot Partial Summ J at 2, 4; Ptf's Mem Opp'n Def's Mot Partial Summ J at 3; Def's Resp & Reply at 3-4.)

/ / /

/ / /

---

[6] Note that 100 percent of the revenue from Plaintiff's Cable segment is only 95 percent of Plaintiff's consolidated revenues.

## II.  ANALYSIS

The issue before the court is whether Plaintiff was an interstate broadcaster subject to Oregon's special apportionment provisions found in ORS 314.680 through ORS 314.690, or whether the standard apportionment provisions found in ORS 314.605 through ORS 314.675 (the Uniform Division of Income for Tax Purposes Act, or "UDITPA") apply.[7]

A.     *Summary Judgment Standard*

Both parties have filed motions for partial summary judgment.

1.       *Summary Judgment*

Tax Court Rule (TCR) 47 C[8]  provides that:

> "The court shall grant the motion if the pleadings, depositions, affidavits, declarations, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law. No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment. The adverse party has the burden of producing evidence on any issue raised in the motions as to which the adverse party would have the burden of persuasion at trial. The adverse party may satisfy the burden of producing evidence with an affidavit or declaration under section E of this rule."

"A fact is material only when 'under applicable law, [it] might affect the outcome of a case.' " *Frost v. Lane County Assessor*, TC-MD 111101N, WL 851227 at *3 (Mar 14, 2012), citing *Sidhu v. Dept. of Rev.*, 19 OTR 207, 212 (2007) (citations omitted).  To show that a genuine issue of material fact exists, the party adverse to the motion "has the burden of producing evidence on any issue raised in the motions as to which the adverse party would have

---

[7] The court's references to the Oregon Revised Statutes (ORS) are to 2007 because there are no material differences between the 2005 and 2007 editions.

[8] Pursuant to the Preface of the Magistrate Division rules, "[i]f circumstances arise that are not covered by a Magistrate Division rule, rules of the Regular Division of the Tax Court may be used as a guide to the extent relevant."

the burden of persuasion at trial." TCR 47 C. The court views any evidence in the record in the light most favorable to the adverse party, and grants summary judgment if "no objectively reasonable juror" could return a verdict for that party. *See id*. In this case, both parties have raised the same issues in their summary judgment cross-motions, and focus on the same statutory provisions; their disagreement centers on their respective interpretations and rationales. Accordingly, the court will first view the evidence in the light most favorable to Plaintiff.

2. *Plaintiff's Assertions of Material Facts in Dispute and Defendant's Entitlement to Prevail as a Matter of Law*

Plaintiff in its memorandum opposing Defendant's motion for partial summary judgment contends that, under TCR 47 C, Defendant's motion should be denied because "(1) there are genuine issues as to material facts, and (2) Defendant is not entitled to prevail as a matter of law." (Ptf's Mem Opp'n'n Def's Mot Partial Summ J at 1.) By way of explanation, Plaintiff asserts that "Defendant's Motion is premised on one summary factual *assertion*, that Plaintiff 'is a cable company[,]' and one flawed factual *assumption*, that because the legislative history references cable companies, Plaintiff therefore must be an 'interstate broadcaster.' " (*Id*. at 2) (emphasis added).)

a. Genuine Issues of Material Fact

The court rejects Plaintiff's contention that there are genuine issues as to material facts that preclude Defendant from prevailing as a matter of law. Defendant's assertion that Plaintiff is a cable company is a fact alleged by Defendant on pages 4, 5 and 10 of its partial summary judgment motion, but the parties have presented sufficient facts for the court to determine whether Defendant's contention is correct and, if so, whether that is a material fact bearing directly on the court's determination of whether Plaintiff is subject to apportionment of its income under Oregon's interstate broadcaster statutes. Moreover, Plaintiff does not dispute that

it is a cable company, but, rather, notes that "the services [it] offered during the years at issue are dramatically different than those offered by 'cable companies' in 1989, when the broadcaster apportionment rules were enacted." (Ptf's Mem Opp'n Def's Mot Partial Summ J at 5.)

        b.      Entitlement to Prevail as a Matter of Law

In asserting that Defendant is not entitled to prevail as a matter of law, an argument based on Defendant's reference to legislative history and conclusion that Plaintiff is an interstate broadcaster, Plaintiff argues that "Defendant's assertion that Plaintiff is a 'cable company' grossly oversimplifies and mischaracterizes the scope and true nature of Plaintiff's business operations * * *." (Ptf's Mem Opp'n Def's Mot Partial Summ J at 2.) Plaintiff elaborates on its assertion that Defendant is not entitled to prevail as a matter of law, asserting that Defendant "studiously avoids the definition of 'broadcasting,' the technology that Plaintiff used to provide its services, and any analysis regarding which, if any, of Plaintiff's services constitute 'broadcasting.' " (Ptf's Mem Opp'n Def's Mot Partial Summ J at 4.)

The court rejects Plaintiff's first assertion because Defendant included the statutory definition of "broadcasting" on page 2 of its Motion For Partial Summary Judgment, and in its Response and Reply brief, Defendant addresses the statutory definition of "broadcasting" in great detail, providing definitions of all of the key words and phrases in that definition, and then applies the "expanded" definition to Plaintiff's operations and the broadcaster apportionment statutes. (Def's Resp & Reply at 1-5.) The court rejects Plaintiff's second and third assertions on the same grounds. In sum, Defendant has presented sufficient facts and legal arguments to defeat a threshold challenge to Defendant's entitlement to prevail as a matter of law.

/ / /

/ / /

B.      *Standard Method for Apportioning Business Income*

Oregon has a statutory framework designed to govern the sourcing of income of businesses operating in Oregon and other states. Generally, "[a]ll business income shall be apportioned to this state by multiplying the income by the sales factor." ORS 314.650. ORS 314.610(7) defines "sales" as "all gross receipts of the taxpayer not allocated under ORS 314.615 to 314.645." The Department of Revenue's administrative rule defines "sales" as "all gross receipts derived by a taxpayer from the transactions and activity in the regular course of such trade or business." OAR 150-314.665(1)-(A)(1).[9] Gross receipts include "gross amounts realized (the sum of money and the fair market value of other property or services received) on the sale or exchange of property, the performance of services, or the use of property or capital (including rents, royalties, interest and dividends) * * *." OAR 150-314.665(6)(c)(1). Receipts from sales or services are sourced to Oregon if the income-producing activity is either performed entirely within this state or both in Oregon and one or more other states. ORS 314.665(4). In the latter instance (the income-producing activity is performed in Oregon and another state) "the greater proportion of the income-producing activity [must be] performed in this state" for the sales to be deemed to have occurred in this state. That determination is "based on costs of performance." *Id*. Plaintiff argues that its "receipts from its sales of video, high-speed Internet and digital phone services, as well as advertising, other sources, franchise fees and programming,

_____

[9] The court's references to the Oregon Administrative Rules (OARs) are to the rules in effect for the years at issue. However, there have been no changes to the rules pertaining to this appeal prior to Defendant's June 28, 2012, Notices of Deficiency for 2007, 2008 and 2009 and Plaintiff's administrative appeal to Defendant filed July 27, 2012. And ORS 305.125, enacted by the 2009 Oregon Legislature (2009 Or Laws ch 494 § 2), precludes the Department of Revenue from "apply[ing] an administrative rule in a manner that requires a change in the treatment of an item of income or expense, a deduction, exclusion, credit or other particular on a report or return filed by a taxpayer [provided the return was timely filed] and [t]he treatment of the item on the report or return was consistent with an administrative rule adopted and in effect at the time that the report or return was filed." There is no allegation that Plaintiff's 2007, 2008, and 2009 corporate excise tax returns were not timely filed, and the deficiency notices do not include any penalties (most particularly, a penalty for late filing). Therefore, the court concludes Plaintiff's returns were timely filed.

are 'gross receipts' under OAR 150-314.665(6)(c)(1) because they are derived from transactions and activities conducted in the regular course of Plaintiff's trade or business." (Ptf's Mot For Partial Summ J at 4.) Plaintiff's position is set forth in more detail below.

C.     *Oregon's Broadcaster Apportionment Rules*

Under ORS 314.682, the ordinary rules governing the apportionment of business income are supplanted in the case of an "interstate broadcaster." The following statutory provisions are particularly relevant to the issue in this case.

ORS 314.682(1) provides that the income of interstate broadcasters is to be apportioned as provided in ORS 314.680 through ORS 314.686. That statute provides: "[n]otwithstanding any provisions of ORS 314.605 to 314.675 to the contrary, ORS 314.680, 314.684 and 314.686 shall apply to the apportionment of the income of an *interstate broadcaster*." (Emphasis added.) ORS 314.680(3) defines "interstate broadcaster" as "a taxpayer that engages in the for-profit business of *broadcasting* to subscribers or to an audience located both within and without this state."

ORS 314.680(1) defines "[b]roadcasting" as "the activity of *transmitting any one-way electronic signal* by * * * wires, coaxial cables, wave guides or other conduits of communications." (Emphasis added.) That definition is at the heart of the parties' dispute in their cross-motions for partial summary judgment.

Finally, ORS 314.684(4) provides the method for apportioning the income of an interstate broadcaster.[10] That statute explains how the sales factor is to be determined. Subsections (2)

/ / /

---

[10] Although the court's ruling here focuses on the "apportionment" of an interstate broadcaster's income, ORS 314.686 allows the Department of Revenue to "require either the segregated method of reporting or the apportionment method of reporting" when determining the net income attributable to an interstate broadcaster's gross receipts, "so as [to] fairly and accurately [] reflect the net income of the interstate broadcaster's business done within this state."

and (3) outline the method for determining the denominator and numerator of the ratio described in subsection (4) of ORS 314.684. ORS 314.684 provides:

> "(4) [g]ross receipts from broadcasting of an interstate broadcaster which engages in income-producing activity in this state shall be included in the numerator of the sales factor in the ratio that the interstate broadcaster's audience or subscribers located in this state bears to its total audience and subscribers located both within and without this state."

Defendant insists that "[t]he legislature intended that ORS 314.680 to ORS 314.690 be applied to cable companies[,] [that] Comcast is a cable company," and that "[t]he legislature's intention that cable companies use an audience or subscriber factor, instead of cost of performance, is evident from the text, context, and legislative history." (Def's Mot Partial Summ J at 10.) Defendant's position is outlined in more detail below.

D.      *The Parties' Arguments*

1.      *Defendant's Position*

Defendant asserts in its Motion For Partial Summary Judgment, filed July 30, 2014, that the text, context, and legislative history of ORS 314.680 through ORS 314.690, the statutes specifically applicable to "interstate broadcasters," show that the legislature's intention in adopting those provisions in 1989 by the passage of House Bill 2226, was to apply the special apportionment formula found in those statutes to cable companies. (Def's Mot Partial Summ J at 4-6, 10.) Because Comcast fits within the statutory definition of interstate broadcaster, Defendant asserts it is subject to such apportionment. (*Id*. at 4-5.)

Defendant first notes that ORS 314.682(1) provides an exception to the standard apportionment provisions for business income under UDITPA, codified in ORS 314.605 through ORS 314.675, for "an interstate broadcaster." (*Id*. at 4.) Defendant then points out that ORS 314.680(3) defines an "interstate broadcaster" as "a taxpayer that engages in the for-profit

business of broadcasting to *subscribers* or to *an audience* located both within and without this state," and that the word "broadcasting" is defined in subsection (1) of ORS 314.680 as "the activity of transmitting any one-way electronic signal by * * * wires, *coaxial cables*, wave guides or other conduits of communications." (*Id*. at 4-5) (emphasis added).)

Defendant contends that additional support for its conclusion that Plaintiff is a "broadcaster" is found in ORS 314.684(4), a statute that defines the method for determining the sales factor for the apportionment of income of an interstate broadcaster. (Def's Mot Partial Summ J at 5.) ORS 314.684(4) provides that:

> "Gross receipts from <u>broadcasting of an interstate broadcaster</u> which engages in income-producing activity in this state shall be included in the numerator of the sales factor in the ratio that the interstate broadcaster's <u>audience or subscribers</u> located in this state bears to its total audience and subscribers located both within and without this state."

(Def's Mot Partial Summ J at 5 (emphasis in original).)

Defendant further asserts that "[t]he contextual relationship of these statutes indicates that Comcast falls within the definition of an interstate broadcaster * * * and, thus, is required to use the audience or subscribers ratio in determining its sales factor." (*Id*.)

Finally, Defendant argues that "legislative history is consistent with the text and context of ORS 314.680 to ORS 314.690, enacted by the legislature as HB 2226.[11]" (Def's Mot Partial Summ J at 5.) Defendant asserts that "the 1989 legislative history [of House Bill 2226] shows that the bill was specifically amended to add the word 'subscribers,' along with 'coaxial cable,' to make certain that cable companies would be covered by the 'audience or subscribers' factor provisions." (*Id*. at 5-6.) Defendant notes that certain comments made during legislative sessions, including committee meetings, reveal that there were questions and concerns over the

---

[11] "HB" stands for House Bill.

original draft version of House Bill 2226. After certain revisions were introduced, revisions that became part of the B Engrossed Bill that later became the law passed by the legislature, there were statements made to the effect that the intent of the 1989 legislation was to make certain that "cable companies" were intended to be part of the broadcaster statute and taxed accordingly. (*Id*. at 5-9.)

Defendant's Response to Plaintiffs' Motion for Partial Summary Judgment and Reply acknowledges that "broadcasting," as defined in ORS 314.680(1), involves "<u>transmitting any one-way electronic signal</u> by radio waves, microwaves, wires, coaxial cables, wave guides or other conduits of communications." (Def's Resp & Reply at 1) (emphasis in original).) Defendant then focuses on the definitions of certain key words and phrases in that statutory definition of "broadcasting." Defendant first notes that the word "transmitting" is defined as follows: " '1a: to cause to go or be conveyed to another person or place  2: to send out a signal either by radio waves or over a wire line. *Webster's Third New International Dictionary*, ed. 2002.' " (*Id*.) Defendant then notes that, although Webster's dictionary does not define the term "electronic signal," it does define the word "electronic * * * as 'relating to electronics.' " (*Id*.) "Electronics," notes Defendant, "is defined as 'a branch of physics that deals with the emission, behavior, and effects of electrons in vacuums and gases and with the utilization of electronic devices.' " (*Id*. at 1-2.)

Defendant asserts that the two "more significant" or "pertinent" terms in ORS 314.680(1) are "signal" and "one-way." (*Id*. at 2.) Defendant quotes the definition of "signal" found in the 2002 edition of *Webster's Third New International Dictionary*: " '9 b: the intelligence, message, sound or image conveyed in telegraph, telephony, radio, or television  c: a detectable physical quantity or impulse (as a voltage, current, magnetic field strength) by which

messages or information can be transmitted." (*Id*.) Defendant asserts that "[t]he pertinent definition of 'one-way' states: '2: that functions in only one of two or more possible ways < a *one-way* radio for receiving but not transmitting broadcast signals >.' " (*Id*.) (emphasis in original).) Defendant then reiterates the definition of "interstate broadcaster," which, at its core, pertains to "* * * a taxpayer that engages in the for-profit business of broadcasting to subscribers or to an audience * * *." (*Id*.)

Defendant insists that "the above-defined words taken together show that 'broadcasting' is an activity engaged in by Plaintiff where Plaintiff transmits any (even just one) electronic signal directly to a subscriber for profit." (*Id*. at 2-3.) Defendant continues its reasoning as follows: "[a]lthough [Plaintiff] provides services that allow the subscriber to use the return-path on the cable system to, e.g., request a movie on-demand, the fact is that transmission of an electronic signal carrying some type of video is the fundamental service [Plaintiff] provides its subscribers." (*Id*. at 3.)

Defendant takes exception to Plaintiff's argument that "its services allow 'two-way' communication, noting in a footnote that the Donnelly Declarations "acknowledge both one-way and two-way video services, but describe Comcast's Internet and VOIP [voice over Internet protocol] services as only two-way[,]" and that Donnelly "does not define two-way." (Def's Resp & Reply at 4.) Defendant then argues that:

> "[w]hile * * * Comcast's cable system accommodates voice over Internet protocol (VOIP), a type of phone service, Internet connections, and On Demand video requests, the actual transmissions are, when viewed as transmissions of bits and bytes – ones and zeros – simply a series of one-way electronic signal transmissions. The fact that certain equipment in Comcast's cable system is designed to both send and receive electronic signals does not negate the fact that Comcast's basic business activity is transmission of electronic signals to subscribers."

(*Id*.)

Finally, although Defendant acknowledges that the definition of "two-way" found in Webster's dictionary includes "moving or allowing movement in either of two directions * * * *specif:* of or being equipment designed for both sending and receiving messages by wire or radio[,]" the fact that Plaintiff's "equipment * * * allows electronic signals to be sent in either of two directions does not defeat the application of ORS 314.680 (1) because electronic signals are sent in only one direction at a time." (*Id*.)

2.      *Plaintiff's Position*

In its cross-motion for partial summary judgment, Plaintiff begins by noting that "Oregon taxpayers are [typically] required to apportion income using * * * [the] apportionment formula [in] ORS 314.650." (Ptf's Mot Partial Summ J at 3.)  Plaintiff notes that Defendant's administrative rule defines "sales" as "all gross receipts derived by a taxpayer from transactions and activity in the regular course of such trade or business. OAR 150-314.665(1)-(A)(1)." (*Id*.)  Plaintiff then sets forth the definition of "gross receipts" as "includ[ing] 'the gross amounts realized * * * on the sale or exchange of property, the performance of services, or the use of property or capital (including rents, royalties, interest and dividends) in a transaction which produces business income * * *.' " (*Id*.)  Plaintiff argues that its "receipts from its sales of video, high-speed Internet and digital phone services, as well as advertising, other sources, franchise fees and programming, are 'gross receipts' under OAR 150-314.665(6)(c)(1) because they are derived from transactions and activities conducted in the regular course of Plaintiff's trade or business." (*Id*. at 4.)

Plaintiff disagrees with Defendant's contention that it is subject to the broadcaster apportionment rules contained in ORS 314.680 through 314.690 because the apportionment provisions contained in those statutes apply to "interstate broadcasters," and Plaintiff insists it is

not an interstate broadcaster because of the statutory definitions of "interstate broadcaster" and "broadcasting." (*Id.*) Plaintiff then sets forth the statutory definitions of "interstate broadcaster," and "broadcasting," emphasizing that the latter term is defined as " 'the activity of transmitting any **one-way** electronic signal * * *." (Emphasis in original.) Plaintiff concludes by arguing that its "cable systems allow the **two-way** delivery of electronic signals, which are 'essential to providing advanced video services, such as video on demand and DVR, as well as high-speed Internet and phone services.' " (*Id.*, *quoting* Donnelly Decl and three exhibits) (emphasis in original).) To drive the point home, Plaintiff insists that "[t]hose [two-way] activities thus do not constitute 'broadcasting' as that term has been defined by the Oregon Legislature for sale factor apportionment purposes." (Ptf's Mot Partial Summ J at 4-5.)

Plaintiff filed separately a memorandum opposing Defendant's motion for partial summary judgment. As discussed above, Plaintiff asserts "Defendant's Motion [for partial summary judgment] should be denied for two reasons: (1) there are genuine issues as to material facts, and (2) Defendant is not entitled to prevail as a matter of law. TCR 47C." (Ptf's Mem Opp'n Def's Mot Partial Summ J at 1.) The court has addressed those challenges to Defendant's Motion for Partial Summary Judgment above. However, Plaintiff builds on its argument that it is not subject to the apportionment provisions applicable to interstate broadcasters.

Plaintiff basically emphasizes that broadcasting for purposes of Oregon's broadcaster apportionment taxation scheme involves the transmission of a one-way electronic signal and its "cable systems allow the **two-way** delivery of electronic signals," rendering Defendant's position "inconsistent with the plain meaning of the statute because it ignores the transmission requirement contained in ORS 314.680(1)." (Ptf's Mem Opp'n Def's Mot Partial Summ J at 1, 4, 5 (emphasis in original).) Plaintiff asserts that Defendant's position regarding the statutory

"transmission" requirement (*i.e.*, one-way versus two-way) "would render the Legislature's definition of the transmission meaningless." (*Id*. at 5.)

Plaintiff further asserts that "[t]he legislative history proffered by defendant does not * * * demonstrate that the Oregon legislature intended for receipts from interactive video, high-speed Internet, digital phone, advertising, and programming to be apportioned in accordance with the broadcaster apportionment rules [because] the one-way, analog video services offered by Plaintiff in 1989, when the [Oregon] broadcaster apportionment rules were enacted, are dramatically different from the wide variety of services that Plaintiff offered twenty years later." (*Id*. at 6.)  Plaintiff further cautions that Defendant's position, if correct, would result in the application of Oregon's "apportionment statutes [being] appl[ied] to evolved or new services," the result of which would mean that "many other video service providers – such as providers of cellphone services and online video services – will be swept into Oregon's special broadcasting apportionment rule." (*Id*.)

Plaintiff's legal argument is that the relevant statutory test is not whether it is a cable company, but whether it is an interstate broadcaster with respect to each of its services. Specifically, Plaintiff argues that its services do not meet the definition of broadcasting under ORS 314.680(1) because its capacity for accepting return signals from subscribers means it does not transmit "one-way" signals.  Plaintiff further contends that each of the variety of services it provides should be analyzed to determine whether it is broadcasting.

In its reply opposing Plaintiff's motion for partial summary judgment, Defendant argues that "[t]he definition of broadcasting in ORS 314.680(1) does not depend on the type of equipment used to send a signal, but rather on the activity of transmitting an electronic signal." (Def's Resp & Reply at 5.)  Defendant alleges that "the actual transmissions are, when viewed as

transmissions of bits and bytes – ones and zeros – simply a series of one-way electronic signal transmissions." (*Id*. at 4.) Defendant draws the conclusion that, because e-mails and voice telephone calls involve electronic transmissions from Plaintiff, they are broadcasting under the statute. (*Id*.) Defendant presents a detailed discussion of its analysis along that line. The court has set forth that reasoning earlier in this decision and need not repeat it here.

C.      *One-way Electronic Signals*

The court agrees with Plaintiff's argument that characterizing Plaintiff as a "cable company" does not end the inquiry, and that each of its services must be evaluated to determine whether it is "broadcasting." The statutory text says nothing of "cable companies[,]" and, instead, applies to "interstate broadcasters" and to gross receipts from "broadcasting." *See* ORS 314.680; ORS 314.684(4).

Under ORS 314.680(3), an interstate broadcaster is "a taxpayer that engages in the for-profit business of broadcasting to subscribers or to an audience located both within and without this state." Broadcasting is defined as "the activity of *transmitting any one-way electronic signal* by radio waves, microwaves, wires, coaxial cables, wave guides or other conduits of communications." ORS 314.680(1) (emphasis added).

The key issue in this case is the proper construction of the phrase "one-way electronic signal" found in ORS 314.680(1). Plaintiff claims those of its services that permit *subscribers* to transmit electronic signals back to Plaintiff, or to third parties using Plaintiff's network architecture of hybrid fiber coax (coaxial cable), are not "one-way." (Ptf's Mot Partial Summ J at 2, 4-5.) Defendant responds that each of Plaintiff's acts of transmitting an electronic signal is one-way, whether or not a subscriber also transmits a signal back to Plaintiff. (Def's Mot Partial Summ J at 5, Def's Resp & Reply at 2-4.)

In construing a statute, the court begins by examining its text and context, and, if useful, its legislative history. *See State v. Gaines* (*Gaines*), 346 Or 160, 166, 206 P3d 1042 (2009). The court "may refer to dictionary definitions to assist * * * in determining the plain meaning of an undefined term." *Triangle Holdings II, LLC v. Stewart Title Guaranty Company*, 266 Or App 531, ___ P3d ___, WL 5365977 at *3 (Oct 22, 2014); *see also Gaines*, 246 Or at 175 n 13-15. The court avoids any construction that would either omit what has been inserted into the statute, or insert what has been omitted. *See* ORS 174.010.

Defendant's construction of ORS 314.680(1) renders the phrase "one-way" found in the statutory definition of "broadcasting" superfluous. If every electronic signal is one-way, then the legislature's addition of the term "one-way" adds nothing to the term "electronic signal." Accordingly, that construction is disfavored under ORS 174.010. Furthermore, as the examples given by Defendant show, Defendant's construction would extend the definition of broadcasting to far-reaching and unintended consequences, subjecting many companies and activities that clearly are not interstate broadcasters or broadcasting to Oregon's special broadcaster statutory provisions. For example, the legislative history provided by Defendant does not support a finding that the legislature intended to encompass telephone calls in its definition of broadcasting.

Plaintiff's construction of the operative phrase "transmitting any one-way electronic signal" is equally problematic. If Plaintiff is correct, *any* return signal from a subscriber would render Plaintiff's transmission two-way, and therefore not "broadcasting." That view has the merit of giving effect to every word of the statute. However, the definition of broadcasting resulting from Plaintiff's view is as surprisingly narrow as Defendant's is surprisingly broad. Would Plaintiff exclude talk-radio stations that accept calls from listeners from the definition of

broadcasting, but not other forms of radio such as satellite (*e.g.*, Sirius satellite radio)? Such calls are audience-generated electronic signals. If the reception of electronic signals back from the audience makes transmission cease to be one-way, such results appear to follow. Would a television broadcaster that limited access to its programming (*i.e.*, television shows) to over the air wave guides be taxed under Oregon's interstate broadcaster apportionment regime but a similar television broadcaster that delivered its transmissions (programming) through coaxial cables or other conduits of communication featuring interactive features like video on demand be taxed under Oregon's single sales factor apportionment formula (UDITPA)?

An alternative construction to both that of Plaintiff and Defendant can be found by looking at the definition and meaning of "signal[,]" quoted by Defendant in its brief, and set forth earlier in this Decision. Plaintiff reads "one-way electronic signal" to refer to a physical phenomenon, something like the state of having the electrons in its cables flowing entirely in one direction. But "electronic signal" need not refer to a physical mechanism. Instead, it may refer to the reason for the physical impulse – the message conveyed:

> "*signal * * * 9 * * * b :* the intelligence, *message*, sound, *or image conveyed in* telegraphy, telephony, radio, radar, or *television  c :* a detectable physical quantity or impulse (as a voltage, current, magnetic field strength) by which messages or information can be transmitted * * *[.]"

*Webster's Third New Int'l Dictionary* 2115 (unabridged ed 2002) (emphasis added). Plaintiff's argument presumes the second definition: electronic signals are physical impulses, and whether they are one-way is a question to be decided by electrical investigation.

The court holds that the first definition is the intended meaning of ORS 314.680(1). The "electronic signal" is not the electrical impulse. Rather, it is the sound, image, or other intelligible communication that the electrical impulses have been harnessed to convey. As shown below, that definition makes the statutory definition of broadcasting consistent with the

ordinary understanding of the term, and, thus, is more likely to be the sense intended by the legislature.

If the "electronic signal" of ORS 314.680(1) is a message rather than a physical impulse, then the phrase "one-way" distinguishes types of messages rather than electrical quantities. Some messages, such as television, are recognizably one-way – the sounds and images are transmitted by one party and received by another. Other messages, such as telephone conversations, involve back-and-forth voice messages and are not one-way.

Return communications that exist to support the delivery of one-way electronic signals do not affect the broadcasting character of such transmissions. Such communications include ordering pay-per-view by telephone, or requesting a song on a radio station. The reason for the return communication is the one-way message – the television or radio program. Without that one-way message, the return signal would be pointless.

Likewise, a communication service does not become one-way simply because its potential is not utilized in every instance. For example, the Oregon State Bar's legal information telephone hotline is not broadcasting, even though the message is conveyed by wires, (*see* ORS 314.680(1)); no return message may be sent by the one who listens to the recordings. Telephone service allows for back-and-forth signaling; if one user disables that capacity, it does not change what is expected from a telephone service provider. Likewise, Internet service is not one-way electronic transmission, even if in many instances it is used passively, because Internet users are able to, and regularly do, send intelligible messages to other users.

In the present matter, there are no material facts in dispute with respect to Plaintiff's video services. Plaintiff's assertions to the contrary are actually disputes with Defendant's legal conclusions. Cable television programming is a one-way electronic signal, even for those

subscribers who make use of some of Plaintiff's advanced features that Plaintiff has listed, including special "on demand" ordering of programming and digital video recording. (Ptf's Mem Opp'n Def's Mot Partial Summ J at 3.) Those features are a convenience to Plaintiff's subscribers, allowing them control over the timing of their viewing, but the function of each is merely to accommodate the reception of the same kind of one-way video. As this court has previously found for the latter half of 2009, the interactive elements of Plaintiff's video service are ancillary to its one-way delivery of video to Plaintiff's subscribers.

The Regular Division of this court made the following finding with regard to Plaintiff's video services in connection with a 2009-10 property tax year appeal involving this same Plaintiff:

> "Although much, if not most, of the communication between [Plaintiff] and its customers in the cable television business is a one way communication from [Plaintiff] to the customer, there are interactive features in that relationship in which the customer communicates with [Plaintiff]. *Those features are, however, secondary in that they exist to facilitate the primary activity of communication from [Plaintiff] to the customer*."

*Comcast Corp. v. Dept. of Rev.* (*Comcast I*), 20 OTR 319, 320 (2011), *rev'd and rem'd*, 356 Or 282, WL 4924281 (Oct 2, 2014) (emphasis added).[12] On appeal, the Oregon Supreme Court found that "[t]he transmitted content or data flows between Comcast and its customers predominantly in one direction – from Comcast to the customer." *Comcast Corporation v. Dept. of Rev. (Comcast II)*, 356 Or 282, 285 (Oct 2, 2014). Although it is true that the Comcast property tax appeal construed a different statutory framework (central assessment of certain property by the Oregon Department of Revenue), the facts concerning Plaintiff's business *operations* would, as Defendant notes in its Supplemental Authority, "be the same for at least the

---

[12] The Supreme Court's reversal of the Regular Division's decision does not abrogate the factual findings contained therein because such review is "limited to errors or questions of law or lack of substantial evidence in the record to support the tax court's decision or order." ORS 305.445.

2009-2010 tax year, which is at issue in both cases, regardless of the type of tax involved."
(Def's Supp Auth at 1.)

It is undisputed that Plaintiff engages in its video services business for profit both within and without this state. Therefore, Plaintiff's video services are broadcasting under ORS 314.680(1) and Plaintiff is an interstate broadcaster under ORS 314.680(3).

However, Internet and telephone services are not broadcasting, for the reasons given above. The record does not contain enough information regarding Plaintiff's advertising, franchising, and programming businesses for the court to determine their relationship to Plaintiff's video broadcasting business.

III. CONCLUSION

Having carefully and thoughtfully considered the matter, the court finds that Plaintiff's video services constitute broadcasting under ORS 314.680(1), and that Plaintiff is an interstate broadcaster under ORS 314.680(3). The court concludes that Plaintiff is not a "broadcaster" with regard to its Internet and telephone services, and is therefore not subject to Oregon's interstate broadcaster apportionment rules found in ORS 314.680 through ORS 314.690. Now, therefore,

IT IS ORDERED that Defendant's Motion for Partial Summary Judgment is granted in part and Plaintiff's Motion for Partial Summary Judgment and Points and Authorities is granted in part. Plaintiff's video services are broadcasting under ORS 314.680(1) and Plaintiff is therefore an interstate broadcaster subject to the apportionment rules of ORS 314.680 through ORS 314.690 with respect to those services.

/ / /

/ / /

IT IS FURTHER ORDERED that Plaintiff shall confer with Defendant and submit to the

court three mutually agreed-upon trial dates no later than 14 days from the date of this Order.

Dated this ___ day of December 2014.


_____

DAN ROBINSON
MAGISTRATE


*This interim order may not be appealed. Any claim of error in regard to this order should be raised in an appeal of the Magistrate's final written decision when all issues have been resolved. ORS 305.501.*

*This document was signed by Magistrate Dan Robinson on December 10, 2014. The court filed this document on December 10, 2014.*